# UNITED STATES COURT OF APPEALS
## for the Fifth Circuit

_____

No. 91-7369
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JOE CLYDE WATSON,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____
(June 30, 1992)

Before JOLLY, DAVIS, and SMITH, Circuit Judges.

DAVIS, Circuit Judge:

Joe Clyde Watson appeals his sentence on grounds that the district court improperly used the retail value of merchandise stolen from a manufacturer and wholesaler in assessing his offense level. We affirm.

I.

A jury convicted Watson of theft from an interstate shipment in violation of 18 U.S.C. § 659. Watson, a truck driver for Tollie Freightways, picked up a shipment of Rubbermaid trash receptacles at Rubbermaid's warehouse in Texas for an interplant shipment to another division of Rubbermaid in Kansas. Watson did not deliver the load, but instead sold the trash receptacles. When he was arrested, the truck trailer was empty.

The Presentence Report (PSR) calculated the loss to Rubbermaid at $12,232.80, based on Rubbermaid's district manager's statement of the estimated retail value of the goods, including warehousing and shipping costs. Because the loss was over $10,000, the PSR recommended a five-point increase in offense level according to U.S.S.G. § 2B1.1(b)(1)(F) (Nov. 1991). Based on an offense level of 9 and a criminal history category of III,

Watson's sentencing guideline range was 8-14 months. Restitution was recommended in the amount of $4,564.80.

Watson objected to the use of $12,232.80 as the amount of the loss and argued that the restitution amount should be used as the loss figure. Watson repeated his objection at the sentencing hearing, arguing that the loss should equal the amount of the invoice introduced into evidence at trial. The district court found that $12,232.80 accurately reflected the total loss suffered by Rubbermaid and overruled the objection. The court then sentenced Watson to 12 months imprisonment to be followed by three years of supervised release, and ordered restitution in the amount of $4,564.80. Watson timely appealed.

## II.

Watson argues on appeal that the district court erroneously used the retail value of the stolen goods rather than their wholesale value. He contends that the restitution amount of $4,564.80 represents the wholesale value and should have been used instead of the $12,232.80 retail value. His argument is based on the fact that at the time of the theft, the goods were being shipped wholesale, that the wholesaler was the victim, and that the retail value is a speculative future value.[1]

Factual findings regarding sentencing factors are entitled to considerable deference and will be reversed only if they are clearly erroneous. "A factual finding is not clearly erroneous as long as it is plausible in light of the record as a whole." **United States v. Sanders**, 942 F.2d 894, 897 (5th Cir. 1991).

## A.

U.S.S.G. § 2B1.1(b)(1) provides for an increase in the offense level based on "loss." "Loss" is defined in the commentary as "the value of the property taken, damaged, or destroyed. Ordinarily, when property is taken or destroyed the loss is the fair market value of the particular property at issue. Where the market value is difficult to ascertain or inadequate to measure harm to the victim, the court may measure loss in some other way, such as reasonable replacement cost to the victim." § 2B1.1, comment. (n.2). The loss does not have to be

---

[1]The government argues that this issue was not properly raised in the district court and so was waived. Although Watson's objections in the district court did not frame the issue as precisely as he does now on appeal, he did argue that the $4,564.80 figure should have been used instead of the $12,232.80 figure. We conclude that Watson has sufficiently preserved the issue for review.

determined with precision and "may be inferred from any reasonably reliable information available." § 2B1.1, comment. (n.3). The Guidelines refer only to "fair market value" and do not discuss if or when wholesale value should be used instead of retail value.

This court has not previously addressed loss valuation for sentencing purposes under § 659. We have, however, construed "value" under § 659 in a related context. The value of the property stolen is significant to determine whether the offense is a misdemeanor or a felony under § 659. In **United States v. Payne**, 467 F.2d 828, 830 (5th Cir. 1972), the court had to determine whether the value of the goods was over or under $100. The evidence showed that the dealer's price was $84.00 but that the retail price was $109.95. The court stated that the definition of "value" in 18 U.S.C. § 659 was that found in § 641, which defines "value" as "face, par, or market value, or cost price, <u>wholesale or retail, whichever is greater</u>." **Id**. at 830 & n. 5, citing 18 U.S.C. § 641 (emphasis added). Accordingly, the court applied § 659's felony provisions to Payne.

We also take guidance from the Eighth Circuit's treatment of the same issue we face today. In **United States v. Russell**, 913 F.2d 1288, 1292-93 (8th Cir. 1990), <u>cert. denied</u>, 111 S.Ct. 1687 (1991), that court held that the district court properly used the retail value in sentencing the defendant under § 2B1.1 for a conviction under § 659. The court applied the definition of value found in 18 U.S.C. § 641, just as this court did in **Payne**. Watson's attempt to distinguish **Russell** is not persuasive. Watson suggests that there was no evidence of wholesale value in **Russell**, whereas there is such evidence here. We disagree that that fact was determinative in **Russell**. Indeed, the **Russell** court stated that "[u]se of wholesale as opposed to retail value would only encourage disparate sentencing for essentially similar criminal acts, especially in cases involving stolen property with several tiers of distribution." **Id.** at 1293. We find the **Russell** court's reasoning compelling.

We do recognize that Watson's argument for using wholesale value is not totally without merit. In **United States v. Perry**, 638 F.2d 862 (5th Cir. Unit A March 1981), the defendant was convicted under 18 U.S.C. § 2314 of interstate transportation of stolen goods valued in excess of $5,000. The goods had been stolen from a wholesaler. The **Perry** court concluded that the market value of goods stolen in wholesale lot should be valued at the wholesale price rather than the retail price. **Id**. at 867-68.

3

We find **Perry** distinguishable, however. **Perry** involved a conviction under § 2314, which falls within Chapter 113 of Title 18. Chapter 113 contains its own section of definitions, § 2311. Under § 2311, "value" is defined as "the face, par, or market value, whichever is the greatest ...." This definition differs from that of § 641, which refers explicitly to retail and wholesale values. Sections 641 and 659 are both found within Chapter 31 of Title 18. This court has specifically applied § 641's definition of "value" to offenses under § 659. **Payne**, 467 F.2d at 830 n. 5. We see no reason to change this policy now and apply the definition of "value" found in another Chapter. See **Russell**, 913 F.2d at 1292 n. 3 (declining to follow cases construing § 2311); **United States v. Griffin**, 527 F.2d 434, 436 (5th Cir. 1976) (applying § 641's definition of "value" to conviction under § 661 because both sections are within Chapter 31 of Title 18).

Moreover, § 2314 requires proof of the property's value at the time it was stolen or at some time during its receipt, transportation, or concealment because the $5,000 amount is jurisdictional. **Perry**, 638 F.2d at 865. Accordingly, the fact that the goods were stolen from a wholesaler was important in **Perry**. In contrast, the value of the property is important under § 659 only to distinguish between misdemeanors and felonies, not for purposes of federal jurisdiction.

Finally, even if Watson were correct that the wholesale value is the proper measure under § 659, it is unclear that his sentence would change. Watson proffers the $4,564.80 figure as the wholesale value, but this figure actually reflects the manufactured cost of the product. There was evidence that the wholesale cost would be "much higher." Even the court in **Perry**, upon which Watson relies, recognized that wholesale market value is more than the cost of manufacture and includes some reasonable mark-up. 638 F.2d at 867. It is reasonable to assume that if the manufacturer's cost was just under $5,000, the wholesale price would be over $5,000, but probably under $10,000. This would put Watson's offense level at 8 instead of 9. The guideline range for an offense level of 8 at Watson's criminal history category of III is 6-12 months. Watson received 12 months. Therefore, even if the district court had used the wholesale value, Watson could have received the same sentence.

B.

Watson also complains that the district court improperly included shipping and warehouse costs in its calculation. Such costs have been found to be included in the meaning of "loss" under § 2B1.1. **United States**

4

**v. Burns**, 894 F.2d 334, 335-36 (9th Cir. 1990).  Thus the district court did not clearly err by including these costs in its calculation.  Moreover, Watson has not provided us with the amount of shipping and warehouse costs in question.  Thus Watson has not demonstrated that the evidence is sufficient to reduce the value of the stolen property by at least $2,232.80, the amount necessary to decrease his offense level by one.  See U.S.S.G. § 2B1.1(b)(1)(F).  Accordingly, any error by the district court would be harmless.  **United States v. Kim**, __ F.2d __, 1992 WL 118650 at *4 (5th Cir. 1992); **Williams v. United States**, 112 S.Ct. 1112, 1120-21, 117 L.Ed.2d 341, 355 (1992).

## III.

We conclude that the district court's finding that the loss was $12,232.80 was not clearly erroneous.

AFFIRMED.